## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

TRUSTEES OF THE NATIONAL
AUTOMATIC SPRINKLER INDUSTRY
WELFARE FUND,
TRUSTEES OF THE NATIONAL
AUTOMATIC SPRINKLER LOCAL 669 UA
EDUCATION FUND,
TRUSTEES OF THE NATIONAL
AUTOMATIC SPINKLER INDUSTRY
PENSION FUND,
TRUSTEES OF THE SPRINKLER
INDUSTRY SUPPLEMENTAL PENSION
FUND,
TRUSTEES OF THE INTERNATIONAL
TRAINING FUND,
TRUSTEES OF THE METAL TRADES
WELFARE FUND and
TRUSTEES OF THE METAL TRADES
PENSION FUND,

      Plaintiffs,

      v.

ALL-STATE FIRE PROTECTION, INC. and
RAYMOND S. GIBLER,

      Defendants.

Civil Action No. TDC-16-1433

## MEMORANDUM OPINION

This case alleging unpaid contributions under a collective bargaining agreement is before the Court on a Motion for Default Judgment. Having reviewed the Complaint, the Motion, and the supporting documents, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the following reasons, the Motion for Default Judgment is GRANTED.

## BACKGROUND

Plaintiffs ("collectively, "Trustees") are the trustees of the National Automatic Sprinkler Industry Welfare Fund, National Automatic Sprinkler Local 669 UA Education Fund, National Automatic Sprinkler Industry Pension Fund, Sprinkler Industry Supplemental Pension Fund, International Training Fund, Metal Trades Welfare Fund, and Metal Trades Pension Fund (collectively, "NASI Funds"), as that term is defined in the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1002(3) (2012). Defendant All-State Fire Protection, Inc. ("All-State"), a Colorado corporation that conducts business as a contractor or subcontractor in the sprinkler industry, is an "employer in an industry affecting commerce," as defined in ERISA. *See* 29 U.S.C. § 1002(5), (12). Defendant Raymond S. Gibler ("Gibler"), a citizen of Colorado, is All-State's President.

All-State is required to make regular contributions to the NASI Funds pursuant to (1) a Collective Bargaining Agreement ("CBA") between the Road Sprinkler Fitters Local Union No. 669 (the "Union") and various employers, including All-State; (2) the Restated Agreements and Declarations of Trust establishing the NASI Funds (the "Trust Agreements"); and (3) the Guidelines for Participation in the NASI Funds (the "Guidelines"). By the terms of these agreements, All-State must make contributions to the NASI Funds "for each hour of work by employees performing installation of automatic sprinkler systems" at rates specified in the CBA. Compl. ¶ 5, ECF No. 1.

The Trust Agreements and the Guidelines provide that an employer who fails to pay timely the amounts required by the CBA must pay liquidated damages assessed as follows: (1) If payment is not received by the 15th day of the month, 10 percent of the amount due will be assessed; (2) an additional 5 percent is added if payment is not received by the last working day

2

of the month; and (3) an additional 5 percent is added if payment is not received by the 15th day of the following month. The Guidelines further specify that if the Trustees must initiate a legal action to compel payment of delinquent contributions, the employer also becomes liable for attorney's fees, costs, and interest on the unpaid contributions from the date of delinquency through the date of payment at a rate of 12 percent per annum.

All-State employed individuals covered by the CBA during the period from May 2013 through the present. The Trustees allege that All-State has been delinquent in making its required regular contributions to the NASI Funds. The Complaint alleges that All-State has failed to make complete contributions for the months of December 2015, January 2016, February 2016, March 2016, and April 2016, with a total amount due of $160,530.49. In addition, All-State owes certain liquidated damages because its payments have not been timely. All-State's contributions for the months of September 2015 and November 2015, and the partial contributions paid for December 2015 and January 2016, were paid late. All-State's contributions for February 2016 and March 2016, which have not yet been paid, are past due. Pursuant to the liquidated damages provisions of the Trust Agreements, All-State owes $59,528.57 in liquidated damages assessed on its late contributions. Finally, All-State owes interest on the unpaid contributions.

In addition to its unpaid contributions, All-State owes additional funds stemming from its breach of a settlement agreement previously reached with the Trustees relating to unpaid contributions from before June 2015. From May 2013 through June 2015, All-State experienced significant difficulty in making the required benefit contributions to the NASI Funds. As a result, the NASI Funds and All-State entered into a Settlement Agreement and Promissory Note (the "Settlement Agreement") allowing for payment over time of all amounts owed. The

Settlement Agreement required the payment of a principal amount of $390,704.07 by All-State to the NASI Funds in monthly installments over a period of 28 months, plus interest (the "Settlement Payments"). Pursuant to the Settlement Agreement, the Trustees agreed to waive liquidated damages in the amount of $233,268.12 contingent upon (1) All-State making each and every one of the scheduled payments as they came due under the Settlement Agreement and (2) All-State remaining current with its regular monthly contributions under the CBA and Trust Agreements. Gibler executed the Settlement Agreement on behalf of All-State and committed himself as guarantor for all amounts owed by All-State to the NASI Funds, including future contributions owed to the Funds during the 28-month period of the Settlement Agreement.

All-State defaulted on the terms of the Settlement Agreement by failing to make its regular contributions to the NASI Funds and by failing to make the Settlement Payments due May 1, 2016. Pursuant to the terms of the Settlement Agreement, All-State is in default, and Defendants therefore owe $520,102.88 for remaining Settlement Payments and reinstated liquidated damages.

On May 12, 2016, the Trustees filed their Complaint in this case seeking (1) $520,102.88 as owed under the terms of the Settlement Agreement; (2) $160,530.49 for contributions owed from December 2015 through April 2016; (3) $59,528.57 in liquidated damages assessed on late contributions for the months of September 2015 and November 2015 through March 2016; (4) all contributions and liquidated damages that became due between the date of filing through the date of judgment; and (5) interest, attorney's fees, and costs. The Trustees further assert that Gibler, as guarantor of both the amounts owed under the Settlement Agreement and the regular contributions owed during the period of the Settlement Agreement, is jointly and severally liable with All-State.

4

On June 17, 2016 Defendants All-State and Gibler ("Defendants") were served with the Complaint. Neither Defendant has filed a responsive pleading. On August 12, 2016, the Trustees filed a Motion for Clerk's Entry of Default and a Motion for Default Judgment. A default was entered against both Defendants on September 28, 2016. To date, neither Defendant has responded to that default or to the Trustees' Motion for Default Judgment.

## DISCUSSION

The Motion for Default Judgment seeks an order entering Judgment against the Defendants for past-due contributions, amounts owed under the Settlement Agreement, liquidated damages, interest, attorney's fees, and costs. In addition, the Trustees assert that "[s]ubsequent to the filing of this action, the amount owed by the Defendants to the [NASI Funds] has changed" because All-State paid its partial contributions due for the months of January 2016 and February 2016, but it failed to make contributions for May 2016 and June 2016. *See* Mem. Supp. Mot. Def. J. at 1, ECF No. 9-1. The Trustees thus adjust their damages claim to seek (1) $466,327.44 as owed under the Settlement Agreement; (2) $216,419.31 in past-due regular contributions; (3) liquidated damages of $89,845.14; (4) interest of $9,665.44; and (5) attorney's fees of $1,222.50.

## I.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Under Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed R. Civ. P. 55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default

judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). However, it remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Charles Allan Wright & Arthur R. Miller, Federal Practice & Procedure § 2688 (3d ed. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). If liability is established, the court must then determine the appropriate amount of damages. *See Ryan*, 253 F.3d at 780-81.

In calculating damages, the court does not accept as true the factual allegations of the plaintiff but must instead make an independent determination. *See Dundee Cement Co. v.*

6

*Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Lawbaugh*, 359 F. Supp. 2d at 422. To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

## II.    Liability

Because Defendants have failed to appear or otherwise defend, the Court accepts as true the well-pleaded factual allegations in the Complaint. *Ryan*, 253 F.3d at 780. Those allegations establish that All-State was obligated by the terms of the CBA and the Trust Agreements to make timely contributions to the NASI Funds for any hours worked by covered employees and to provide timely reports of hours worked by covered employees. The allegations further establish that All-State made its regular contributions for September 2015 and November 2015 late; that All-State made only partial contributions for December 2015 and January 2016, also late; and that All-State failed to make its required regular contributions for February 2016, March 2016, or April 2016.

The Complaint also provides that All-State was obligated by the terms of its Settlement Agreement to make monthly installment payments over a period of 28 months and to remain current on all future contributions to the NASI Funds for the duration of the settlement. The allegations sufficiently demonstrate that All-State breached the terms of the Settlement Agreement when it failed to make required regular contributions to the NASI Funds and failed to make the settlement payment due on May 1, 2016.

7

Finally, the Complaint and the Declaration of John P. Eger, Assistant Fund Administrator of the NASI Funds ("the Eger Declaration") establish that Gibler assumed liability as guarantor for the amounts owed by All-State—both the money owed under the Settlement Agreement and the regular contributions owed during the period governed by the Settlement Agreement. According to Eger, All-State and Gibler executed the Settlement Agreement on August 17, 2015, so the 28-month period covered by the Settlement Agreement includes the unpaid contributions for each month alleged in the Complaint.

Thus, the Complaint sufficiently alleges that both All-State and Gibler are jointly and severally liable to the Trustees for unpaid contributions and Settlement Payments, as well as for additional liquidated damages and interest provided for in the governing documents.

## III.   Damages

### A.   Unpaid Contributions

Turning first to damages for unpaid contributions, pursuant to the CBA, Trust Agreements, and Trust Guidelines, All-State is liable to the Trustees for its (1) unpaid contributions, (2) liquidated damages, and (3) interest of 12 percent per annum on the unpaid contributions. These provisions track ERISA itself, which provides that employers who fail to timely make contributions are liable for:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>     (i) interest on the unpaid contributions; or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under Subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).  The Trustees are therefore entitled under both ERISA and the terms of

the parties' agreements to each category of damages asserted in the Complaint relating to All-

State's unpaid regular contributions.

As to specific amounts, in the Motion for Default Judgment, the Trustees assert that

Defendants owe (1) $216,419.31 in unpaid contributions, representing amounts for the months

from December 2015 through June 2016; (2) $89,845.14 in liquidated damages assessed on late

contributions for the months from September 2015 through June 2016; and (3) $9,665.44 in

interest.  In support of these damages, the Trustees rely on the Eger Declaration, which confirms

the facts in the Complaint and the accuracy of these figures.

With respect to unpaid contributions, the $216,419.31 figure accounts for Defendants'

payment of partial contributions for January 2016 and February 2016, which reduces the amount

owed through April 2016.  This figure also includes new amounts owed for May 2016 and June

2016, which were not specifically pled in the Complaint.  Likewise, the requested $89,845.14 in

liquidated damages includes amounts not covered by the demand in the Complaint, specifically,

amounts covering the period from April to June 2016.

Ordinarily, the Trustees would be precluded from recovering on a motion for default

judgment damages that were not specifically pled in the Complaint.  *See* Fed. R. Civ. P. 54(c)

("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the

pleadings.").  Certain courts, however, have upheld a damages award on a default judgment that

exceeds the specific amount requested if there was also a request for an unspecified additional

amount of damages, as long as the complaint provides notice that the plaintiff intends to seek

such damages.  *See In re Genesys*, 204 F.3d 124, 132 (4th Cir. 2000) (certifying the case to the

Supreme Court of Hawaii to determine whether the unspecified damages were permitted under

state law); *Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974) (affirming a default judgment awarding damages in excess of the amount specifically pled because the complaint also sought damages "the amount of which was to be proved at trial"). Such an award can include damages accrued during the pendency of an action, if specifically sought in the complaint. *Ames v. STAT Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005); *cf. Locher v. Unum Life Ins. Co.*, 389 F.3d 288, 297-98 (2d Cir. 2004) (affirming an award of damages for disability benefits accrued between the date of the filing of the complaint and the date of judgment).

Here, the Complaint not only identifies a specific amount of damages sought, but also seeks additional damages for "all contributions and liquidated damages which become due subsequent to the filing of this action through the date of judgment." Compl. ¶ E. Defendants were thus on notice that the Trustees would be seeking damages beyond the amounts specified in the Complaint. This notice was renewed when the Trustees filed their Motion for Default Judgment. *See Ames*, 277 F.R.D. at 362. Consequently, the Trustees may recover the unpaid contributions for May 2016 and June 2016, for a total of $216,419.31 in unpaid contributions. Likewise, the Trustees may recover liquidated damages relating to April to June 2016, resulting in a total amount of liquidated damages of $89,845.14. Finally, the Trustees are awarded $9,665.44 in interest, an amount that is consistent with the terms of the parties' agreements.

**B.     Settlement Agreement**

Turning next to the amounts owed under the Settlement Agreement, the Trustees alleged in the Complaint that Defendants owe $520,102.88 in remaining Settlement Payments and liquidated damages pursuant to the terms of the Settlement Agreement. In the Motion for Default Judgment, however, the Trustees reduce that figure to $466,327.44. In support of these claims, the Trustees rely again on the Eger Declaration and supporting calculations, which

10

establish that All-State and Gibler agreed to the Settlement Agreement; that All-State is in default on the Settlement Agreement; and that, as a result of the default, the remaining unpaid amount is immediately undue and payable.   Accordingly, the Trustees are entitled to $466,327.44 under the terms of the Settlement Agreement.

### C.    Attorney's Fees and Costs

Finally, in support of their request for attorney's fees and costs, the Trustees submit the declaration of attorney Charles W. Gilligan, as well as a spreadsheet detailing the hours billed and costs incurred by Trustees' counsel.   These documents indicate that the Trustees' counsel, who has been a member of the bar for over 20 years, spent 0.5 hours on this case at a rate of $310 per hour, and that his paralegal spent 8.75 hours on the case at a rate of $122 per hour. These rates are well within this District's guidelines and are reasonable.   *See* D. Md. Local R. App. B ¶ 3.   The Trustees are therefore awarded $1,222.50 in attorney's fees.   The billing documents provided also substantiate the following costs:   $400 for the filing fee and $245 for service of process.   Accordingly, the Trustees are awarded $645 in costs.   *See* 29 U.S.C. § 1132(g)(2)(D) (permitting an award of attorney's fees and costs).

### CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment is GRANTED.   The Trustees are awarded a total of $784,124.83, as specified in the separate Order accompanying this Memorandum Opinion.

Date:  November 29, 2016

THEODORE D. CHUANG
United States District Judge